IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECOLAB INC. and ECOLAB USA INC., | ) |
| Plaintiffs, | ) C.A. No: |
| v. | ) **JURY TRIAL DEMANDED** |
| DUBOIS CHEMICALS, INC., | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiffs, for their Complaint against Defendant, state and allege as follows:

1. Plaintiff Ecolab Inc. is incorporated in the state of Delaware and has a principal place of business at Ecolab Global Headquarters, 1 Ecolab Place, St. Paul, Minnesota 55102.

2. Plaintiff Ecolab USA Inc. is incorporated in the state of Delaware and has a principal place of business at Ecolab Global Headquarters, 1 Ecolab Place, St. Paul, Minnesota 55102. Ecolab Inc. and its subsidiary Ecolab USA Inc. are collectively referred to herein as "Ecolab."

3. Ecolab is the global leader in water, hygiene, and energy technologies and services. Around the world, businesses in a variety of industries, including *inter alia* food and beverage processing, choose Ecolab products and services to keep their environment clean and safe, operate efficiently, and achieve sustainability goals. Among other solutions, Ecolab offers hygiene and conveyor lubrication products and services to beverage and bottling facilities to improve safety and efficiency.

4. Upon information and belief, Defendant DuBois Chemicals, Inc. ("DuBois") is a Delaware Corporation and has a principal place of business at 3630 East Kemper Road, Sharonville, Ohio 45241.

5. DuBois is in the business of *inter alia* providing conveyor lubrication products and services to beverage bottling facilities.

## JURISDICTION AND VENUE

6. This is a civil action for patent infringement, arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271 and 281-85, and for breach of contract arising under the laws of the State of Delaware.

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a), and/or supplemental jurisdiction as stated in 28 U.S.C. § 1367, and/or upon principles of pendent and ancillary jurisdiction.

8. Venue is proper in this district pursuant to 28 U.SC. §§ 1391 and 1400.

## FACTUAL BACKGROUND

**I.  Ecolab's prior suit against International Chemical Corporation and resulting settlement agreement with DuBois**

9. On November 7, 2018, Ecolab filed suit against DuBois's predecessor in interest, International Chemical Corporation ("ICC"), raising claims of (i) breach of contract; (ii) infringement of U.S. Patent No. 7,741,257 (the "'257 patent"); (iii) infringement of U.S. Patent No. 7,745,381 (the "'381 patent"); (iv) infringement of U.S. Patent No. 8,058,215 (the "'215 patent"); (v) infringement of U.S. Patent No. 8,211,838 (the "'383 patent"); (vi) infringement of U.S. Patent No. 8,216,984 (the "'984 patent"); (vii) infringement of U.S. Patent No. 8,455,409 (the "'409 patent"); (viii) infringement of U.S. Patent No. 8,765,648 (the "'648 patent"); (ix) trademark infringement; (x) unfair competition under Federal law; and (xi) violations of the Florida Deceptive and Unfair Practices Act.

10. At the center of the parties' dispute was ICC's infringing use, sale, and provision of a silicone-based dry conveyor lubricant to beverage bottling plants in competition with Ecolab,

who holds multiple patents covering the use of such a lubricant. The term "dry lubricant" refers to a lubricant composition that is applied on an infrequent and intermittent basis, typically without additional in-line dilution, to conveyor surfaces, chains, or belts in beverage bottling plants.

11. Prior to the development of dry lubricants, nearly all bottling plants used "wet lubricants" to lubricate conveyor surfaces. Wet lubricant compositions were combined with significant amounts of water prior to application, often by metering small quantities of the lubricant into a water line, and they were applied on a constant or nearly constant basis.

12. In late 2019, while Ecolab's 2018 suit against ICC was pending, DuBois bought ICC. Upon learning ICC's business would now be operated by DuBois, Ecolab moved to join DuBois as a party to the 2018 litigation. While that motion was pending, Ecolab and ICC and Ecolab and DuBois engaged in a series of negotiations that resulted in the settlement and termination of the 2018 litigation. The settlement agreement entered into by and between Ecolab and DuBois, effective March 24, 2020, is attached hereto as **Exhibit A** (the "Settlement Agreement").

13. Under the terms of the Settlement Agreement, DuBois was required to take several actions by no later than May 23, 2020, including:

- Updating any labels, instructions, manuals, specification sheets, videos, websites, and the like to specify that DuBois's silicone-containing dry lubricant must be applied using a brush mechanism, wherein the brush bristles of each brush remain substantially in contact with the conveyor surface whenever lubricant is being applied during conveyor operation (the "Guidance") (Sec. 1.1 of the Settlement Agreement);

- Sending a letter to the plant manager of each facility that has purchased silicone-containing dry lubricant from ICC or DuBois (Sec. 1.2(A));

- For corporate customers, sending a letter transmitting the Guidance to the corporate person responsible for the company's compliance with laws and regulations (Sec. 1.2(B));

- Inspecting the application equipment of all facilities that have purchased silicone-containing dry lubricant directly from ICC or DuBois to ensure that all application stations applying said lubricant use a brush mechanism as required by the Guidance (Sec. 1.2(C));

- Identifying to Ecolab any application that cannot be brought into compliance within the period and provide a proposed time frame for remedy (Sec. 1.3);

- Sending letters to distributors transmitting the Guidance and explaining Ecolab's assertions of patent infringement (Sec. 1.4);

- Obtaining agreement from distributors who apply their own labels to silicone-containing dry lubricants sold to them by DuBois to include the Guidance on those labels (Sec. 1.5); and

- Training all employees, representatives, and/or independent contractors who are currently involved in the sale and/or service of silicone-containing dry lubricants on behalf of DuBois on the Guidance (Sec. 1.7).

14. The Settlement Agreement also requires that (1) a notice be provided to plant personnel responsible for any plant not in compliance with the Guidance; and (2) in the event of a second violation by such a customer, DuBois cease selling silicone-containing dry lubricant until DuBois can be reasonably assured the customer can remain in compliance.

15. Though the COVID-19 pandemic was in its very early stages at the time the Settlement Agreement was executed, the parties anticipated that the pandemic may impact DuBois's ability to complete certain tasks by the deadlines set forth in the Settlement Agreement. To address this possibility, the Settlement Agreement includes a provision to address the impact of the pandemic. This provision required DuBois to use commercially reasonable efforts to comply with the deadlines set in the Settlement Agreement. The relevant provision further provided if, despite such efforts, DuBois anticipated needing additional time to meet the deadlines established in Sections 1.1-1.3 and 1.5-1.7, DuBois would provide written notice to Ecolab at least 15 days before the deadline in question. The provisions of Section 1.4 requiring DuBois to send letters to its distributors transmitting the Guidance and explaining Ecolab's assertions of patent infringement were not extendable.

16. In exchange for DuBois's agreement to *inter alia* take the affirmative actions outlined above, Ecolab covenanted *inter alia* that it would not sue DuBois for infringement of certain of Ecolab's patents related to Ecolab's dry lubricant technology as long as DuBois remained in compliance with the terms of the Settlement Agreement.

II. **DuBois's breach of the Settlement Agreement**

17. To obtain an extension to the deadlines of Sections 1.1-1.3 and 1.5-1.7, DuBois needed to request an extension by May 8, 2020. DuBois made no timely request. On May 15, 2020, DuBois made a late request to extend the deadlines to July 15, 2020. Ecolab granted the request on the condition that DuBois provide monthly updates to Ecolab's outside counsel addressing DuBois's efforts to bring itself into compliance with the terms of the Settlement Agreement. On May 18, 2020, DuBois agreed it would provide monthly updates containing the details requested by Ecolab.

18.     Despite agreeing to provide monthly updates to Ecolab, DuBois failed to provide any update by June 18, 2020. Upon prompting from Ecolab via correspondence and a telephone conference, DuBois finally provided a report on June 29, 2020. Even this late report from DuBois, however, lacked information regarding many of the details Ecolab had sought and DuBois had agreed to provide.

19.     In the following months, DuBois provided additional deficient reports to Ecolab. The deficient nature of these reports has prevented Ecolab from having any confidence that DuBois has come into compliance with the Settlement Agreement. Indeed, as recently as December 2020, DuBois acknowledged that it had not yet completed the tasks required by the Settlement Agreement, despite the fact that these tasks were, per the terms of the Settlement Agreement, to be completed nearly eleven (11) months ago. DuBois has provided no specific details regarding its plan to complete these tasks or a concrete timeline for when it will come into compliance.

20.     Additionally, Ecolab personnel providing services other than conveyor lubricant services have had occasion to visit bottling plants using silicone-containing dry lubricants provided by DuBois. In multiple plants, Ecolab personnel has observed DuBois dry lubricants being applied in a manner that violates the Settlement Agreement and infringes Ecolab's patents. Though many of these plants, or their corporate owners, are repeat offenders, DuBois continues to provide them with silicone-containing dry lubricant in violation of the Settlement Agreement.

**III.     Ecolab's U.S. Patent Nos. 7,741,257; 7,745,381; and 8,058,215**

21.     On June 22, 2010, United States Patent No. 7,741,257 B2 (hereinafter the "'257 patent") entitled DRY LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab Inc. as assignee. Ecolab USA Inc. is the current owner of all right, title, and interest in the '257 patent. A copy of the '257 patent is attached hereto as **Exhibit B**.

6

22. On June 29, 2010, United States Patent No. 7,745,381 B2 (hereinafter the "'381 patent") entitled LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab Inc. as assignee. Ecolab USA Inc. is the current owner of all right, title, and interest in the '381 patent. A copy of the '381 patent is attached hereto as **Exhibit C**.

23. On November 15, 2011, United States Patent No. 8,058,215 B2 (hereinafter the "'215 patent") entitled DRY LUBRICANT FOR CONVEYING CONTAINERS was duly and legally issued to Ecolab USA Inc. as assignee; and since that date Ecolab USA Inc. has been, and still is, the owner of all right, title, and interest in the '215 patent. A copy of the '215 patent is attached hereto as **Exhibit D**.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,741,257

24. Ecolab restates the allegations set forth in paragraphs 1-23 and incorporates them herein by reference.

25. DuBois has infringed one or more of the claims of the '257 patent, including at least claim 41, by making, using, selling, and/or offering for sale silicone-containing dry lubricants.

26. Claim 41 of the '257 patent covers

A method for lubricating the passage of a container along a conveyor comprising applying an undiluted lubricant composition through non-energized nozzles to at least a portion of the containers-contacting surface of the conveyor or at least a portion of the conveyor-contacting surface of the containers, the undiluted lubricant composition comprising a water-miscible silicone material, wherein the lubricant composition is applied for a period of time and not applied for a period of time and the ratio of applied:not applied time is at least 1:10.

27. DuBois has sold and offered for sale silicone-containing dry lubricant products, including under the name Dry Trac and, upon information and belief, Super Loob OF and TM Smart Track, that include a water-miscible silicone material ("the Accused Lubricants").

28. DuBois sets up the application equipment at its customers' facilities to apply the Accused Lubricants without dilution to a portion of the containers-contacting surface of the conveyors.

29. DuBois has set the application parameters for the Accused Lubricants to reflect a ratio of applied:not applied time of at least 1:10.

30. DuBois has set up the application equipment at its customers' facilities to apply the Accused Lubricants through non-energized nozzles.

31. DuBois has also contributed to the infringement of the '257 patent by selling and offering for sale the Accused Lubricants.

32. The Accused Lubricants comprise a material part of the claimed invention of the '257 patent, are not staple articles of commerce, and have no substantial noninfringing use.

33. DuBois has been aware of the '257 patent since at least October 26, 2019, when it purchased ICC. DuBois has continued to provide the Accused Lubricants to customers that it knows apply them in a manner that infringes the '257 patent.

34. DuBois's customers—namely, the bottling facilities that purchase DuBois's Accused Lubricants—directly infringe the '257 patent by using the Accused Lubricants in a process that embodies the invention of the '257 patent. DuBois knows that its customers use the Accused Lubricants in a manner that infringes the '257 patent.

35. DuBois has also induced infringement of the '257 patent by selling the Accused Lubricants to bottling facilities and encouraging those facilities to use them in a process that infringes the '257 patent. DuBois has also assisted those facilities in using the Accused Lubricants in a process that infringes the '257 patent.

36. DuBois's knowledge of the '257 patent since at least October 26, 2019, combined with its continued provision of the Accused Lubricants to customers it knows are infringing the '257 patent, demonstrates that DuBois has intended to induce its customers to infringe the '257 patent.

37. DuBois's customers—namely, the bottling facilities that purchase the Accused Lubricants—directly infringe the '257 patent by using the Accused Lubricants in a process that embodies the invention of the '257 patent. DuBois knows that its customers use the Accused Lubricants in a manner that infringes the '257 patent.

38. Ecolab has been damaged by DuBois's infringement of the '257 patent in an amount to be proven at trial.

39. DuBois is and has been aware that the '257 patent was duly and legally issued and that DuBois's use, manufacture, sale, and/or offer for sale of the Accused Lubricants infringed the '257 patent and contributed to and induced infringement of the '257 patent by others. Indeed, DuBois admitted in the Settlement Agreement that the '257 patent is "valid and enforceable in all respects."

40. DuBois's infringement of the '257 patent is and has been willful and intentional.

41. For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO 7,745,381

42. Ecolab restates the allegations set forth in paragraphs 1-41 and incorporates them herein by reference.

43. DuBois has infringed one or more of the claims of the '381 patent, including at least claim 1, by making, using, selling, and/or offering for sale silicone-containing dry lubricants.

44. Claim 1 of the '381 patent covers

A method for lubricating the passage of a container along a conveyor comprising applying a lubricant composition through non-energized nozzles to at least a portion of the container-contacting surface of the conveyor or at least a portion of the conveyor-contacting surface of the container, the lubricant composition comprising a silicone emulsion, wherein the lubricant composition contains less than about 500 ppm of triethanolamine salts of alkyl benzene sulfonic acid compounds.

45. DuBois has sold and offered for sale silicone-containing dry lubricant products, including the Accused Lubricants, that include a silicone emulsion and less than about 500 ppm of triethanolamine salts of alkyl benzene sulfonic acid compounds.

46. DuBois sets up the application equipment at its customers' facilities to apply the Accused Lubricants to at least a portion of the container-contacting surface of the conveyors.

47. DuBois has set up the application equipment at its customers' facilities to apply the Accused Lubricants through non-energized nozzles.

48. DuBois has also contributed to the infringement of the '381 patent by selling and offering for sale the Accused Lubricants.

49. The Accused Lubricants comprise a material part of the claimed invention of the '381 patent, are not staples article of commerce, and have no substantial noninfringing use.

50. DuBois has been aware of the '381 patent since at least October 26, 2019, when it purchased ICC. DuBois has continued to provide the Accused Lubricants to customers that it knows apply them in a manner that infringes the '381 patent.

51. DuBois's customers—namely, the bottling facilities that purchase DuBois's Accused Lubricants—directly infringe the '381 patent by using the Accused Lubricants in a process that embodies the invention of the '381 patent. DuBois knows that its customers use the Accused Lubricants in a manner that infringes the '381 patent.

52. DuBois has also induced infringement of the '381 patent by selling the Accused Lubricants to bottling facilities and encouraging those facilities to use them in a process that infringes the '381 patent. DuBois has also assisted those facilities in using the Accused Lubricants in a process that infringes the '381 patent.

53. DuBois's knowledge of the '381 patent since at least October 26, 2019, combined with its continued provision of the Accused Lubricants to customers it knows are infringing the '381 patent, demonstrates that DuBois has intended to induce its customers to infringe the '381 patent.

54. DuBois's customers—namely, the bottling facilities that purchase the Accused Lubricants—directly infringe the '381 patent by using the Accused Lubricants in a process that embodies the invention of the '381 patent. DuBois knows that its customers use the Accused Lubricants in a manner that infringes the '381 patent.

55. Ecolab has been damaged by DuBois's infringement of the '381 patent in an amount to be proven at trial.

56. DuBois is and has been aware that the '381 patent was duly and legally issued and that DuBois's use, manufacture, sale, and/or offer for sale of the Accused Lubricants infringed the '381 patent and contributed to and induced infringement of the '381 patent by others. Indeed, DuBois admitted in the Settlement Agreement that the '381 patent is "valid and enforceable in all respects."

57. DuBois's infringement of the '381 patent is and has been willful and intentional.

58. For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## **COUNT III – INFRINGEMENT OF U.S. PATENT NO. 8,058,215**

59. Ecolab restates the allegations set forth in paragraphs 1-58 and incorporates them herein by reference.

60. DuBois has infringed one or more of the claims of the '215 patent, including at least claim 1, by making, using, selling, and/or offering for sale silicone-containing dry lubricants.

61. Claim 1 of the '215 patent covers

> A method for lubricating the passage of a container or package along a conveyor comprising:
> spray-applying a water-containing lubricant composition comprising from about 0.2 to about 8 wt. % of a water-miscible silicone material and water through a non-energized nozzle to at least a portion of a container-contacting or package-contacting surface of the conveyor or at least a portion of a conveyor-contacting surface of the container or package,
> wherein the lubricant composition is not further diluted with water upon application, is applied for a period of time and not applied for a period of time, and the ratio of applied:not applied time is at least 1:10.

62. Dubois has sold and offered for sale silicone-containing dry lubricant products, including the Accused Lubricants, that include between about 0.2 to about 8 wt. % of a water-miscible silicone material and water.

63. DuBois sets up the application equipment at its customers' facilities to apply the Accused Lubricants without dilution upon application to a portion of the container-contacting surface of the conveyors.

64. DuBois has set the application parameters for the Accused Lubricants to reflect a ratio of applied:not applied time of at least 1:10.

65. Dubois has set up the application equipment at its customers' facilities to apply the Accused Lubricants through non-energized nozzles.

66. DuBois has also contributed to the infringement of the '215 patent by selling and offering for sale the Accused Lubricants.

67. The Accused Lubricants comprise a material part of the claimed invention of the '215 patent, are not staple articles of commerce, and have no substantial noninfringing use.

68. DuBois has been aware of the '215 patent since at least October 26, 2019, when it purchased ICC. DuBois has continued to provide the Accused Lubricants to customers that it knows apply them in a manner that infringes the '215 patent.

69. DuBois's customers—namely, the bottling facilities that purchase DuBois's Accused Lubricants—directly infringe the '215 patent by using the Accused Lubricants in a process that embodies the invention of the '215 patent. DuBois knows that its customers use the Accused Lubricants in a manner that infringes the '215 patent.

70. DuBois has also induced infringement of the '215 patent by selling the Accused Lubricants to bottling facilities and encouraging those facilities to use them in a process that infringes the '215 patent. DuBois has also assisted those facilities in using the Accused Lubricants in a process that infringes the '215 patent.

71. DuBois's knowledge of the '215 patent since at least October 26, 2019, combined with its continued provision of the Accused Lubricants to customers it knows are infringing the '215 patent, demonstrates that DuBois has intended to induce its customers to infringe the '215 patent.

72. DuBois's customers—namely, the bottling facilities that purchase the Accused Lubricants—directly infringe the '215 patent by using the Accused Lubricants in a process that embodies the invention of the '215 patent. DuBois knows that its customers use the Accused Lubricants in a manner that infringes the '215 patent.

73. Ecolab has been damaged by DuBois's infringement of the '215 patent in an amount to be proven at trial.

74. DuBois is and has been aware that the '215 patent was duly and legally issued and that DuBois's use, manufacture, sale, and/or offer for sale of the Accused Lubricants infringed the '215 patent and contributed to and induced infringement of the '215 patent by others. Indeed, DuBois admitted in the Settlement Agreement that the '215 patent is "valid and enforceable in all respects."

75. DuBois's infringement of the '215 patent is and has been willful and intentional.

76. For the reasons set forth herein, Ecolab is entitled to recover actual damages, treble damages, attorneys' fees, and the costs of this litigation pursuant to 35 U.S.C. §§ 284 & 285.

## COUNT IV – BREACH OF CONTRACT

77. Ecolab restates the allegations set forth in paragraphs 1-76 and incorporates them herein by reference.

78. Ecolab and DuBois entered into a valid contract, the Settlement Agreement attached as Exhibit A, on or around March 24, 2020.

79. The Settlement Agreement required DuBois to take a number of affirmative steps to ensure that its dry lubricant customers apply dry lubricant provided by DuBois only through brush applicators substantially in contact with the conveyors to which the lubricant is applied. The Settlement Agreement also required that DuBois would cease providing dry lubricant to customers who, after a warning, continued to apply dry lubricant in any manner other than that prescribed by the Settlement Agreement until DuBois was reasonably assured that the customer could remain in compliance.

80. DuBois has breached the Settlement Agreement by failing to take the steps required by the Settlement Agreement, despite numerous extensions, and by continuing to provide dry lubricant to customers applying the lubricant to conveyors in a prohibited manner.

81. DuBois's breach of the Settlement Agreement has injured Ecolab in an amount to be determined at trial.

82. By reason of DuBois's breach, Ecolab is entitled to recover actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Ecolab prays for judgment that:

A. United States Patent Nos. 7,741,257; 7,745,381; and 8,058,215 are valid and have been infringed by DuBois;

B. An accounting be had for the damages arising out of DuBois's infringement of United States Patent Nos. 7,741,257; 7,745,381; and 8,058,215, including treble damages for willful infringement as provided by 35 U.S.C. § 284, with interest;

C. DuBois has breached the parties' Settlement Agreement;

D. Ecolab be awarded its actual damages caused by DuBois's breach of the Settlement Agreement;

E. Ecolab be awarded its attorneys' fees, costs, and expenses in this action; and

F. Ecolab be awarded such other and further relief as this Court may deem necessary and proper.

## DEMAND FOR JURY TRIAL

Ecolab hereby demands a trial by jury of all issues so triable.

OF COUNSEL:

Rachel Zimmerman Scobie
Eric R. Chad
Merchant & Gould P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402-4247
612-332-5300

Dated:  April 23, 2021

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
Valerie A. Caras (#6608)
Dorronda R. Bordley (#6642)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
caras@rlf.com
bordley@rlf.com

*Attorneys for Plaintiffs*